UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANET E. KELLY, </br>    Plaintiff, </br>  v. </br> MICHAEL J. ASTRUE, </br> Commissioner of Social </br> Security, </br>    Defendant. | Case No. SACV 07-757 JC </br></br> MEMORANDUM OPINION |

## I.   SUMMARY

On July 11, 2007, plaintiff Janet E. Kelly ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have filed a consent to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; July 19, 2007 Case Management Order, ¶ 5.

///

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") regarding statements made by plaintiff's boyfriend and the severity and duration of plaintiff's depression are supported by substantial evidence and are free from material error.[1]

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On January 8, 2004, plaintiff filed an application for Supplemental Security Income benefits and Disability Insurance Benefits. (Administrative Record ("AR") 68, 71-73, 501). Plaintiff asserted that she became disabled on December 10, 1999, due to a back injury. (AR 71, 88). The ALJ examined the medical record and heard testimony from a medical expert, a vocational expert, and plaintiff, who was represented by counsel, on June 13, 2006. (AR 520-56).

On November 21, 2006, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 12). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: cervical and lumbosacral degenerative disc disease, obesity and depression (AR 14); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal one of the listed impairments (AR 14-15); (3) plaintiff (a) could lift and carry 20 pounds occasionally and ten pounds frequently; (b) could sit, stand, or walk for six hours out of an eight hour day, but must be able to change position briefly for one to three minutes every hour; (c) was restricted from climbing ladders or scaffolds but could occasionally climb stairs, bend, balance, stoop, kneel, crouch, or crawl; (d) was restricted from working at unprotected

---

[1] The harmless error rule applies to the review of administrative decisions regarding disability. See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of application of harmless error standard in social security cases).

1  heights and being around dangerous or fast moving machinery; and (e) was limited
2  to simple repetitive tasks.  The ALJ also determined that as of December 2003, in
3  addition, plaintiff:  (f) was restricted from keeping her head/neck in a fixed
4  position for more than one hour without a brief break to change position; (g) could
5  frequently rotate her head/neck to 50% of range of motion and occasionally rotate
6  her head/neck to extremes in range of motion; (h) could occasionally reach
7  overhead with the bilateral upper extremities; and (i) could do occasional foot
8  controls with the left lower extremity (AR 15-16); (4) plaintiff was unable to
9  perform her past relevant work (AR 18); (5) plaintiff could perform jobs that exist
10 in significant numbers in the national economy (AR 19); and (6) plaintiff's
11 allegations regarding the extent, intensity, duration, and functionally limiting
12 effects of her impairments were not entirely credible (AR 16-18).

The Appeals Council denied plaintiff's application for review.  (AR 5-7).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit her ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled.[2] If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform her past relevant work?[3] If so, the claimant is not disabled. If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

---

[2]An impairment matches a listing if it meets all of the specified medical criteria. Sullivan v. Zebley, 493 U.S. 521, 530 (1990); Tackett, 180 F.3d at 1098. An impairment that manifests only some of the criteria, no matter how severely, does not qualify. Sullivan, 493 U.S. at 530; Tackett, 180 F.3d at 1099. An unlisted impairment or combination of impairments is equivalent to a listed impairment if medical findings equal in severity to all of the criteria for the one most similar listed impairment are present. Sullivan, 493 U.S. at 531.

[3]Residual functional capacity is "what [one] can still do despite [ones] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. §§ 404.1545(a), 416.945(a).

### B. Standard of Review

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

### C. Evaluation of Lay Witness Evidence

Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. Stout, 454 F.3d at 1056 (citations omitted); Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); see also Robbins, 466 F.3d at 885 (ALJ required to account for all lay witness testimony in discussion of findings) (citation omitted); Regennitter v. Commissioner, 166 F.3d 1294, 1298 (9th Cir. 1999) (testimony by lay witness who has observed claimant is important source of information about claimant's impairments); Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) (lay witness testimony as to claimant's symptoms or how impairment affects ability to work is

competent evidence and therefore cannot be disregarded without comment) (citations omitted); Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (ALJ must consider observations of non-medical sources, e.g., lay witnesses, as to how impairment affects claimant's ability to work). A conflict with the medical evidence constitutes a "germane reason" to reject the testimony of a lay witness. See Lewis, 236 F.3d at 511 (citing Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir.1984)).

Most of the above-cited authorities speak in terms of the "testimony" of lay witnesses. However, the standards discussed in these authorities appear equally applicable to written statements. Cf. Schneider v. Commissioner, 223 F.3d 968, 974-75 (9th Cir. 2000) (ALJ erred in failing to consider letters submitted by claimant's friends and ex-employers in evaluating severity of claimant's functional limitations).

In cases in which "the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination. Robbins, 466 F.3d at 885 (quoting Stout, 454 F.3d at 1055-56).

**IV.   DISCUSSION**

**A.   The ALJ Properly Considered Evidence from Plaintiff's Boyfriend**

Plaintiff alleges that the ALJ failed properly to consider a lay witness statement of plaintiff's boyfriend. (Plaintiff's Motion at 2-5). This Court disagrees.

On March 21, 2004, plaintiff's boyfriend completed a report that reflects his observations regarding plaintiff's alleged impairments and their asserted impact on plaintiff's daily activities. (AR 105-113 [Exhibit 5E]). The ALJ expressly referenced the boyfriend's third party statement and gave three reasons germane to

plaintiff's boyfriend for discounting the statements, each of which is supported by substantial evidence in the record. (AR 17) (citing Exhibit 5E [AR 105-13]).

First, the ALJ pointed to an internal inconsistency in the boyfriend's statement. (AR 17-18). On the one hand, the boyfriend noted that plaintiff had problems concentrating. However, he also stated that she was able to follow written and spoken instructions. Plaintiff's boyfriend also appears to have contradicted his statement regarding plaintiff's concentration difficulties when he noted that plaintiff had a long attention span and usually finished what she started. (AR 110).

Second, the ALJ noted that the boyfriend's statement was "inconsistent with the opinions, findings and observations by qualified medical personnel." (AR 17). Contrary to the boyfriend's contention that plaintiff had concentration difficulties, a psychologist who conducted a complete psychiatric evaluation of plaintiff in February 2005, concluded that plaintiff's attention and concentration were adequate. (AR 18) (citing Exhibit 13F [AR 264]).[4]

Finally, the ALJ noted that although plaintiff and her boyfriend both alleged that excess pain significantly restricted plaintiff's functioning, there was evidence indicating that plaintiff magnified or exaggerated her pain symptoms – suggesting that the boyfriend's observations were colored by such magnification and exaggeration. (AR 18). Specifically, the ALJ referenced a January 31, 2001 report from a physical therapist which reflects: (1) plaintiff "perceives her pain to

---

[4]Contrary to plaintiff's suggestion, it was not inappropriate for the ALJ to favor the opinion of the evaluation psychologist over that of plaintiff's boyfriend irrespective of the fact that the evaluating psychologist saw plaintiff once and did not review documents as part of her evaluation. The court further notes that plaintiff is mistaken to the extent she suggests that the psychologist did not offer Axis I or II diagnoses. (Plaintiff's Motion at 3). The psychologist wrote "V71.09, no diagnosis" for both Axis I and II. (AR 265). According to the Diagnostic and Statistical Manual of Mental Disorders, the V71.09 code is intended to be used when "no Axis I diagnosis or condition is present" and when "no Axis II diagnosis . . . is present." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 743 (4th ed. 2000).

be significantly higher than what might by studies, be considered normal"; and (2) "There is some symptom magnification or exaggeration occurring at this time." (AR 18, 437).

Based on the foregoing, this Court concludes that the ALJ properly considered the lay witness statement of plaintiff's boyfriend, and provided reasons germane to such witness for rejecting his statement which are supported by substantial evidence in the record. Accordingly, plaintiff is not entitled to reversal or remand on this basis.

**B. The ALJ Properly Considered the Evidence Regarding Plaintiff's Depression**

Plaintiff also alleges the ALJ misstated the record regarding the severity and duration of plaintiff's depression, and that such error warrants setting aside the ALJ's denial of benefits. (Plaintiff's Motion at 5-7). This Court disagrees.

**1. Relevant Evidence**

The record contains the following medical evidence regarding plaintiff's depression.

In a March 22, 2000 consultation, Dr. Tadlock noted that plaintiff had reactive depression, but did not indicate that plaintiff had any functional limitations resulting therefrom. (AR 458).

In a consultation report dated April 20, 2001, Dr. Mashhood noted that plaintiff had a history of depression. (AR 427-29).

A November 12, 2002 progress note from a pain management clinic – attributed to physician's assistance Eastman and Dr. Tadlock – indicated that plaintiff had "some depression and anxiety symptoms." (AR 386).

An April 16, 2004 consultation request reflects that plaintiff suffered from depression. (AR 177).

On May 24, 2004, a state agency psychiatrist, Dr. Rajadhyaksha, evaluated plaintiff. (AR 179-80; 353-54). The psychiatrist diagnosed plaintiff with major

8

depressive disorder without psychotic features, which the psychiatrist noted was profound, was not being treated, and was affecting plaintiff's social and functional capabilities. (AR 180, 354). The psychiatrist further indicated: Although plaintiff was able to understand and carry out simple instructions, her concentration was poor, and she was distracted at times, requiring questions to be repeated. (AR 180, 354). The psychiatrist postulated that plaintiff would have difficulty keeping to a schedule, dealing with changes in a work environment and finishing tasks on time, but did not quantify the limitations. (AR 180, 354).

The psychiatrist also completed a form indicating that plaintiff had: (1) no restrictions on daily activities based on psychiatric reasons; (2) moderate difficulty maintaining social functioning; (3) moderate difficulty with concentration, persistence and pace; (4) no reported episodes of emotional deterioration in work-like situations; (5) a mild limitation in understanding, carrying out and remembering simple instructions; (6) a mild to moderate limitation in responding appropriately to co-workers, supervisors and the public; (7) a moderate limitation in responding appropriately to usual work situations (attendance, safety, etc.); and (8) a mild limitation dealing with changes in a routine work setting. (AR 181). The psychiatrist also indicated that plaintiff had a mental impairment that would limit her ability to engage in work activity, but did not provide a description of the limitation as called for on the form. (AR 181).

On June 14, 2004, another doctor completed a Psychiatric Review Technique form (AR 182-95). The physician indicated that plaintiff had an affective disorder that coexisted with nonmental impairments that required referral to another medical specialty. (AR 182). Plaintiff's impairment was classified as severe but not expected to last 12 months. (AR 182). The physician indicated that the impairment would not be severe by February 2005. (AR 182). The physician checked a box indicating that plaintiff had a disturbance of mood accompanied by a full or partial manic or depressive syndrome as evidenced by at least a

depressive syndrome. (AR 185). By February 2005, plaintiff was anticipated to have a mild degree of limitation in (1) restrictions of activities of daily living; (2) difficulties in maintaining social functioning; and (3) difficulties in maintaining concentration, persistence or pace. (AR 192). In a section for notes, the physician wrote that with adequate treatment, plaintiff's condition was expected to be "non severe" by February 2005. (AR 194). On July 23, 2004, a psychologist, Dr. Bradley, reviewed the Psychiatric Review Technique form and agreed with all of its applicable conclusions and determinations. (AR 196).

On February 7, 2005, a clinical psychologist, Dr. Cross, completed a psychiatric evaluation of plaintiff. (AR 264-67). Plaintiff reported she had no prior mental health treatment. (AR 264). The psychologist observed: (1) plaintiff's mood was non-labile, non-depressed and non-anxious; (2) plaintiff was oriented; (3) plaintiff's abstract reasoning and memory were intact; and (4) she had no, and reported having no delusions or hallucinations. (AR 265). The psychologist diagnosed plaintiff with: psychosocial stressors: stressors from back pain. (AR 265). The psychologist further noted: (1) plaintiff had no psychosis, tremors, speech, hearing or vision impairments; (2) she was fully oriented with memory intact; (3) she was able to understand and follow through on simple instructions; and (4) she would not be a danger in the workplace. (AR 265). The psychologist concluded that plaintiff was "fully capable of being employed from a psychological point of view." (AR 265).

On March 2, 2005, another doctor completed a Psychological Review Technique form. (AR 267-82). The completing physician indicated that plaintiff had an affective disorder, but that her impairments were not severe. (AR 267). The physician indicated plaintiff had a disturbance of mood, accompanied by a full or partial manic or depressive syndrome that was medically determinable, but did not fit the diagnostic criteria of the form – depression not otherwise specified. (AR 270). Plaintiff's condition caused a mild degree of limitation in:

1 (1) restrictions of activities of daily living; (2) difficulties in maintaining social
2 functioning; and (3) difficulties in maintaining concentration, persistence or pace.
3 (AR 277). Plaintiff had no episodes of decompensation. (AR 277, 278).

On March 14, 2005, a physician indicated that plaintiff remained on no psychological treatment, with no mention of depression in physical medical exams. (AR 292). The physician agreed with the June 14, 2004 observation that plaintiff had no severe psychological impairment by February 2005. (AR 291). The physician concluded that plaintiff's psychological issues were non severe. (AR 292).

On January 19, 2006, a physician diagnosed plaintiff with depression, but made no other comment. (AR 477). On March 16, 2006, a physician diagnosed plaintiff with depression and noted that she should avoid anxiety triggers. (AR 468).

On May 4, 2006, a physician at the Riverside County Regional Medical Center noted that plaintiff had a history of depression. (AR 500). On June 1, 2006, a physician diagnosed plaintiff with depression and noted that the condition was stable. (AR 497).

During the administrative hearing, a medical expert testified: Plaintiff suffered from anxiety or a depressive disorder that had not required hospitalization or emergency room visits. (AR 540). Her impairments, individually, or in combination, did not meet or equal a listing. (AR 540).

### 2. ALJ's Determination

In this case, the ALJ found plaintiff's depression to be a severe impairment, but determined that her mental impairment did not meet or equal the criteria for

///
///
///
///

disability at step three of the evaluation process. (AR 14-15).[5] The ALJ expressly

---

[5]The ALJ cited Listing 12.04 for Affective Disorders as the relevant provision:

> Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, <u>or</u> when the requirements in C are satisfied.
>
> A.  Medically documented persistence, either continuous or intermittent, of one of the following:
>
> 1.  Depressive syndrome characterized by at least four of the following:
>
>     a.  Anhedonia or pervasive loss of interest in almost all activities; or
>     b.  Appetite disturbance with change in weight; or
>     c.  Sleep disturbance; or
>     d.  Psychomotor agitation or retardation; or
>     e.  Decreased energy; or
>     f.  Feelings of guilt or worthlessness; or
>     g.  Difficulty concentrating or thinking; or
>     h.  Thoughts of suicide; or
>     i.  Hallucinations, delusions or paranoid thinking . . . .
>
> And
>
> B.  Resulting in at least two of the following:
>
>     1.  Marked restriction of activities of daily living; or
>     2.  Marked difficulties in maintaining social functioning; or
>     3.  Marked difficulties in maintaining concentration, persistence, or pace; or
>     4.  Repeated episodes of decompensation, each of extended duration;
>
> Or
>
> C.  Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
>     1.  Repeated episodes of decompensation, each of extended duration; or
>     2.  A residual disease process that has resulted in such marginal adjustment

(continued...)

considered the medical evidence in the record relating to plaintiff's depression, including the above-described medical reports and notes generated in May 2004, June 2004, May 2005 to September 2005, and May 2006. (AR 15). The ALJ also considered plaintiff's reports that she was able to cook, wash dishes, do light dusting, drive, read, string beads, watch movies, spend time on the computer, and intermittently work during her asserted period of disability. (AR 15). Based upon such review, the ALJ concluded:

> While [plaintiff] may have some complaints of depression, under the Part B criteria of Listing 12.04, there are mild restrictions in daily activities, mild difficulties in social functioning, mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation. Overall, [plaintiff]'s basic abilities to think, understand, communicate, concentrate, get along with other individuals, and handle work stress have not been impaired. There has been no documented serious deterioration in personal hygiene or habits, daily activities or interests, reality contact, though processes, speech, mood and affect, attention span, insight or judgment. None of the Part C criteria are present.

(AR 15).

### 3. Analysis

As noted above, plaintiff alleges that the ALJ misstated the record regarding the severity and duration of plaintiff's depression, and that such error warrants

///

---

[5](...continued)
that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3.   Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 14).

setting aside the ALJ's denial of benefits.  Plaintiff fails to demonstrate that the ALJ materially erred in her assessment of plaintiff's depression.

First, contrary to plaintiff's assertion, substantial evidence supports the ALJ's conclusions regarding the duration and severity of plaintiff's mental impairments.  While plaintiff correctly notes that the record reflects that she suffered from depression for at least five years, none of the medical evidence in the record supports plaintiff's claim that she suffered "significant symptoms" from her depression beginning in April 2001.  Indeed, the most severe symptom was described in May 2004 when plaintiff was listed as having some moderate restrictions.  However, those restrictions were not found when plaintiff was evaluated again, for example, in February 2005, when a psychologist concluded that plaintiff was "fully capable of being employed from a psychological point of view."  The ALJ accurately described and characterized the evidence in the record.

Second, even assuming the ALJ erred in her assessment of the duration and severity of plaintiff's mental impairments, any error was harmless.  Significantly, plaintiff does not argue that a more thorough or accurate assessment of the duration and severity of plaintiff's mental impairments impacts a determination at any step of the sequential evaluation process.  For example, although plaintiff alleges that the ALJ erroneously characterized her mental impairments at step three of the sequential evaluation analysis, plaintiff does not assert that a "correct" assessment would have impacted the step three determination.  Nor could she, as the evidence cited by the ALJ and described above constitutes substantial evidence to support the ALJ's conclusion that neither the B nor C criteria under Listing 12.04 were present, and that plaintiff therefore did not meet the listing.  Moreover, plaintiff does not suggest that a "correct" assessment of the duration and severity of her impairment would likely have resulted in a determination that she suffered from any functional limitations which prevented her from performing light and unskilled work as determined by the ALJ.  The ALJ took plaintiff's

mental impairment into account in limiting plaintiff to jobs involving simple, repetitive tasks. Here, substantial evidence supports the ALJ's conclusion that although plaintiff's depression qualified as a "severe" impairment, such depression did not render plaintiff unable to engage in substantial gainful activity. Accordingly, any error by the ALJ in describing the severity and duration of plaintiff's depression was harmless.

**V.     CONCLUSION**

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:   September 16, 2008

                                              /s/
                              Honorable Jacqueline Chooljian
                              UNITED STATES MAGISTRATE JUDGE